AT & T COMMUNICATIONS OF THE
SOUTHWEST, INC., Plaintiff,

v.

CITY OF AUSTIN, TEXAS, Defendant.

No. A 97–CA–532 SS.

United States District Court,
W.D. Texas,
Austin Division.

Aug. 21, 1997.

932

Paula W. Hinton, Akin, Gump, Hauer & Feld, Houston, TX, Mary Jean K. O'Conner, Dallas, TX, Andrew W. Austin, Thomas K. Anson, Sheinfeld, Maley & Kay, P.C., Austin, TX, David Graham, Sidley & Austin, Chicago, IL, for Plaintiff.

Peter D. Kennedy, R. James George, Jr., Todd S. George, George Donaldson & Ford, Austin, TX, Andrew Martin, City of Austin, Edward Delabarre, Assistant City of Austin Attorney, Austin, TX, for Defendant.

SPARKS, District Judge.

## ORDER

BE IT REMEMBERED on the 7th day of August 1997 the Court called the above-styled cause for hearing on the plaintiff AT & T Communications of the Southwest, Inc.'s ("AT & T") motion for preliminary injunction filed on July 30, 1997, to which the defendant the City of Austin, Texas (the "City") filed a response on August 7, 1997. The Court also heard oral argument on a motion filed by Southwestern Bell Telephone Company ("SWBT") to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) and the City's motion to dismiss, or in the alternative, to abate. All parties to the suit and SWBT appeared by representation of counsel. In accordance with the Court's announcements at the hearing, the City filed a post-hearing brief on August 14, 1997, in which it presented new evidence and arguments to be considered by the Court. On August 18, 1997, AT & T filed its response to the City's brief. On August 14, 1997, SWBT filed an *amicus curiae* brief on the issues presented at the hearing, particularly on those issues in which SWBT claims to have an interest.[1]

AT & T seeks to enjoin the enforcement of a city ordinance purporting to regulate companies providing local telephone service in Austin. The City asserts that the suit should be dismissed for lack of subject matter jurisdiction or, in the alternative, asks the Court to stay the case pending the resolution of issues within the exclusive or primary jurisdiction of the Federal Communications Commission ("FCC") and/or to abstain from deciding the state law issues raised in AT & T's motion. The City also seeks to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. SWBT filed a motion to intervene in the suit, claiming that AT & T seeks a declaration that the municipal fees to which AT & T may or may not be subject under the ordinance should be deemed paid in whole or in part by SWBT. For the reasons discussed below, the Court concludes that SWBT's motion to intervene as a matter of right and the City's motion to dismiss or abate should be denied and that AT & T's motion for preliminary injunction should be granted.

## I. FACTUAL BACKGROUND

Congress recently enacted the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, *codified at* 47 U.S.C. § 151 *et seq.* (Supp.1997), ("FTA" or the "Act"), in an effort to foster rapid competition in the local

---

1. The quality of the written briefs and the oral presentations of AT & T, the City, and SWBT was excellent. The parties succinctly identified the issues to be determined, made compelling arguments for their respective positions, and exhaustively researched the pertinent areas of the law, making the writing of this opinion a thoroughly enjoyable experience.

telephone service market and to end the monopoly market of local providers. Congress recognized that it would be extremely difficult for potential competitors to enter the market if they had to finance and build their own local telephone networks. Congress therefore devised two means by which new entrants could obtain services from already existing facilities belonging to the incumbent local service provider ("incumbent LEC"). First, incumbent LECs are required under the Act to sell their services at essentially wholesale prices to competitors, who can then resell the services to consumers at retail value. *See* 47 U.S.C. § 251(c)(4). Second, new entrants can purchase access to functionalities of the incumbent LEC's network on an "unbundled" basis, which the new entrants can then use to create their own services. *See* 47 U.S.C. § 251(c)(3). Pursuant to the Act, AT & T attempts to enter the local telephone service market both by reselling services it will purchase from SWBT, the incumbent LEC in Austin, and also by providing services through unbundled network capabilities obtained from SWBT. By offering local service in this manner, AT & T will use SWBT's existing facilities and will not install, operate, maintain, or repair any telecommunications facilities in the City's public rights-of-way.[2] *See In the Matter of Definition of a Cable Television System,* 5 F.C.C.R. 7638, 1990 WL 603007, ¶ 28 (1990) ("Congress did not intend to include within the meaning of the term 'use' of a public right-of-way the mere passing over of such a right-of-way by electromagnetic radiation."). The City will continue to manage SWBT's access

to and use of its public rights-of-way to the extent authorized by law.

Pursuant to the Texas Public Utility Regulatory Act of 1995, Tex.Rev.Civ.Stat. art. 1446c–0 § 3.2531, ("PURA 95"), AT & T applied for and received from the Texas Public Utility Commission ("PUC") a Certificate of Operating Authority ("COA") to operate as a local exchange service provider in Texas. On June 5, 1997, the PUC issued the COA after an extensive review process in which the PUC examined AT & T's financial, technical, and other qualifications as a potential local service provider, including consideration of the types of services AT & T will provide.[3] On July 15, 1997, AT & T became fully authorized by the State to offer, and is technologically capable of offering, local exchange residential service in Texas in areas currently served by SWBT. AT & T began efforts to market local exchange service in Texas on or about July 15, 1997, including the implementation of an "800" number in which potential customers can call and place orders for local telephone service.

On February 13, 1997, the City of Austin, a home rule municipality, approved Ordinance No. 970213–E, which enacted Chapter 18–8 of the City Code (the "Ordinance"). The Ordinance, effective February 24, 1997, requires telecommunications service providers such as AT & T to obtain municipal consent before operating telecommunications services in the City. Ordinance § 18–8–4. The Ordinance is extremely comprehensive. Among other things, it requires: (1) a non-refundable $850.00 application fee; (2) quarterly

---

**2.** SWBT expressed some concern in its *amicus* brief over the use of the term "non-facilities-based" provider to describe AT & T. SWBT points to a recent FCC order stating that a carrier who purchases access to an unbundled network facility has "exclusive access" and "exclusive control" over those network facilities. First Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* CC Docket No. 96–98 (August 8, 1996) ¶¶ 258, 385. That same order confirms, however, that the competitor's use of an incumbent LEC's unbundled network elements "does not alter the incumbent LEC's physical control or ability or duty to repair and maintain the network elements." *Id.* The order appears unambiguously to foreclose the possibility that competitors may exercise any control over an incumbent LEC's physical facilities themselves.

Therefore, the distinction sought by SWBT between pure resellers under § 251(c)(4) and purchasers of unbundled network functionalities under § 251(c)(3) seems unwarranted. AT & T, however, acknowledges that it intends, at some point in the future, to own facilities placed in the City's rights-of-ways. Therefore, for the sake of clarity and simplicity, the term "non-facilities-based provider" is defined for purposes of this order only as a telecommunications services provider that does not physically use or have access to the City's public rights-of-way.

**3.** The PUC concluded that "AT & T ... has the financial and technical qualifications to provide the proposed services and the ability to meet the Commission's quality of service standards."

franchise fees to compensate the City for use and occupancy of the public rights-of-way; (3) disclosure of detailed financial and organizational materials, including copies of the company's filings with the Securities and Exchange Commission, its latest annual report and prospectus, and its Articles of Incorporation and Bylaws; (4) information relating to state and federal certificates of authority to operate as a telecommunications service provider, as well as franchises held in other Texas municipalities; (5) continuing disclosure requirements, such as providing updated audits of its business records and notifying the City of all petitions, applications, and communications with the FCC and the PUC affecting the use of public rights-of-way; (6) information regarding any legal or administrative proceedings in which the provider may have been involved; and (7) information relating to the company's Equal Employment Opportunity program, as well as company plans to encourage procurements from minority-and women-owned businesses. The Ordinance also grants the City the authority to conduct audits of the corporation on thirty-days notice. In short, the information sought by the City is either duplicative of or exceeds the information sought by the PUC in determining whether to grant a COA.

The granting, amending, denying and terminating of a municipal consent is a legislative function within the discretion of the Austin City Council (the "City Council"). Ordinance § 18–8–8. The approval process can take up to six months, and if the City Council refuses to act within the time period prescribed, the application is deemed denied. If the municipal consent is not sought or is denied, the provider cannot compete within Austin city limits and is subject to criminal penalties and fines for each day the provider operates without consent. In light of the Ordinance, AT & T has withdrawn its telemarketing and advertising plans and has instructed its representatives not to solicit or accept orders for local telephone service in Austin.

## II. AT & T's Claims

AT & T brings a combination of federal claims under the FTA, state law claims under PURA 95, and constitutional claims under both the United States and Texas constitutions. By far the most significant and compelling of AT & T's claims is its preemption claim under the FTA.[4] Section 253 of the FTA, entitled "Removal of barriers to entry," provides in relevant part:

> No state or local statute or regulation, or other state or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>
> . . .
>
> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253(a) & (c).

AT & T argues that § 253(c), in conjunction with state law, reserves to municipalities only the limited authority to regulate and make reasonable charges for the installation, maintenance, and repair of physical facilities placed in the public rights-of-way. AT & T argues that the Ordinance, as applied to AT & T, cannot be justified as an exercise of the power reserved to municipalities under § 253(c) since AT & T is not installing or maintaining any facilities in the public rights-of-way. The Ordinance therefore violates § 253(a) of the FTA by flatly prohibiting

---

4. In addition to its FTA claim, AT & T challenges the Ordinance under § 3.2532 of PURA 95, which grants the authority to the PUC to determine when, where, and under what conditions an entity may provide telecommunications services within the State of Texas. This state law claim is germane to the issue of federal preemption and will be discussed more fully in Part V(A), infra. AT & T also raises several due process and equal protection claims under the United States and Texas constitutions. Because the FTA disposes of the issues to be resolved in AT & T's preliminary injunction motion, the Court will not consider the merits of these claims at this time.

non-facilities-based providers like AT & T from providing local service without the City's consent. The City rejects the notion that the FTA preempts all municipal "gatekeeping" authority to regulate telecommunications service providers for the public health, safety, and welfare of its citizens. According to the City, its duty under the FTA is to treat all entities that attempt to enter the local telephone services market in a competitively neutral and non-discriminatory way, a proposition that directly contradicts AT & T's assertion that the FTA requires municipalities to distinguish among telecommunications service providers on the basis of facility ownership.

### III. SWBT's Motion to Intervene as a Matter of Right

■■■ SWBT claims it has a "justifiable and justiciable interest in any legal proceeding determining whether AT & T has an interest in the sums that Southwestern Bell pays to the City and whether Southwestern Bell may pass through fees to AT & T as a customer."[5] Not surprisingly, AT & T opposes the motion to intervene despite the fact that SWBT generally agrees with AT & T's position that the Ordinance is inapplicable to resellers such as AT & T.[6] A party seeking to intervene pursuant to Rule 24(a) must establish each of the following four elements: (1) the application to intervene is timely; (2) the applicant has an interest relating to the property which is the subject matter of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties. *Sierra Club v. Glickman,* 82 F.3d 106, 108 (5th Cir.1996). The motion to intervene is without merit. AT & T makes no

claims or requests for relief regarding any compensation or franchise fees issues that might exist between AT & T and SWBT and between SWBT and the City. Furthermore, the ultimate outcome of this case will have absolutely no effect on SWBT's undisputed obligation under the Ordinance to pay franchise fees to the City as compensation for the use and occupancy of its public rights-of-way. SWBT, therefore, does not have a "direct, substantial, and legally protectable claim" or interest in this litigation. *See Ozee v. Am. Council on Gift Annuities, Inc.,* 110 F.3d 1082, 1096 (5th Cir.1997) (citations omitted).

### IV. The City's Motion to Dismiss or Abstain

#### A. *Subject Matter Jurisdiction*

■■■ AT & T concedes that the FTA does not create an express or implied private right of action for violations of § 253(a) and (c). *See GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968, 970–71 (D.Ariz. 1996) (concluding that no implied private right of action exists under § 253). The plaintiff instead asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331 under two distinct theories. First, the plaintiff asserts a cause of action under 42 U.S.C. § 1983, claiming that the FTA, and specifically §§ 251–253, create enforceable rights for the benefit of new entrants like AT & T that may be vindicated in federal court. Whether this theory has any validity is a question this Court thankfully need not answer at this point. It is apparent that the Court has jurisdiction by virtue of AT & T's Supremacy Clause claim, its second basis for asserting jurisdiction.[7] "A plaintiff who seeks injunctive relief from state [or local] regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the

---

**5.** Under Texas law, local service providers may "pass along" *in toto* municipal franchise fees though a pro rata charge to its customers. *See* PURA 95 § 3.2555(h).

**6.** At the preliminary injunction hearing, counsel for the City stated that it took no position on the motion.

**7.** AT & T's due process and equal protection claims may serve as the basis for subject matter

jurisdiction as long as they are not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." *See Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). Because the plaintiff's preemption claim is the obvious basis for jurisdiction, the Court need not consider at this time whether those claims also confer jurisdiction.

Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *see Hillsborough County v. Automated Lab., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) ("[F]or purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws.").

■ Moreover, the nonexistence of an implied private right of action or a viable § 1983 claim under the particular federal statute is inapposite to whether the Court may exercise jurisdiction. See *Western Air Lines v. Port Authority of New York and New Jersey*, 817 F.2d 222, 225 (2nd Cir.1987) ("A claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law."), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988); *Rollins Envtl. Serv. (FS), Inc. v. Parish of St. James*, 775 F.2d 627, 631–37 (5th Cir.1985) (considering the effect of a preemption provision of the Toxic Substance Control Act, 15 U.S.C. §§ 2601–2629, despite the absence of a private right of action); *cf. White Mountain Apache Tribe v. Williams*, 810 F.2d 844 (9th Cir.1987) (acknowledging that the Supremacy Clause may be invoked to enjoin a preempted state statute but that it does not provide a basis for a § 1983 claim), *cert. denied sub nom. White Mountain Apache Tribe v. Arizona State Transp. Bd.*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987). In its post-hearing brief, the City appears to have abandoned its original contention that the Court lacks subject matter jurisdiction under § 1331 and instead relies on its arguments, discussed below, that the controversy is not ripe and/or that primary jurisdiction belongs with the FCC. Furthermore, except for its argument that the Court should abstain from hearing AT & T's state law claims under the *Pullman* abstention doctrine (see Part V(A), *infra*), the City does not dispute

that the Court may exercise supplemental jurisdiction over AT & T's PURA 95 claims. *See* 28 U.S.C. § 1367(a). Therefore, consistent with AT & T's immediate request for injunctive and declaratory relief only,[8] the Court may exercise jurisdiction over this case.

## *B. Ripeness*

■ It is undisputed that AT & T has not applied to the City for a municipal consent, and AT & T does not allege that the City would deny it a consent or that it is unable to meet the requirements of the Ordinance. The City therefore contends that the controversy is premature and that the Court should either dismiss or abate the action pending AT & T's application to the City for consent. AT & T, on the other hand, argues that it is prepared to offer local telephone service in Austin immediately and that it is prevented from doing so only because it has not applied for a municipal consent that the City cannot constitutionally require. The City acknowledges that AT & T will be in violation of the Ordinance-and therefore subject to criminal penalties-if AT & T attempts to provide local telephone service without obtaining the consent.

■■ The following standard is used to determine whether a dispute, including a pre-enforcement challenge to a government regulation, is ripe:

A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are the 'fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir.1993) (quoting *New Orleans Public Service, Inc. v. Council for New Orleans*, 833 F.2d 583, 586–87 (5th Cir.1987)). This case is ripe for adjudication. AT & T challenges the ability of the City to impose

---

8. AT & T's complaint also asserts a claim for attorneys' fees and costs, which, of course, is not

at issue in the motion for preliminary injunction.

the Ordinance on non-facilities-based providers, not whether the City Council is lawfully applying specific provisions of the Ordinance. Under the latter circumstance, it would be proper to require a provider to apply for a municipal consent before bringing suit because the actions of the City Council would elucidate the issues to be judicially determined. In this case, however, it is the existence of the Ordinance itself that gives rise to the plaintiff's claims. Furthermore, a determination of AT & T's claims simply requires an examination of the Ordinance in light of federal and state law; no further factual development is required. Finally, the harm to AT & T in this case is present and real. It goes without saying that delayed entry into the local telephone service market can have profound effects on the success of AT & T's venture, particularly against a competitor as well-entrenched as SWBT. Considering the Ordinance's threat of criminal penalties and fines, AT & T was left with the Hobson's choice of either applying for a municipal consent or challenging the Ordinance in an appropriate forum. In short, AT & T's failure to apply for a municipal consent is irrelevant to the merits of this case, and the plaintiff should be delayed no more in its ability to seek relief under the Act.

### C. Preemption by the FCC

The City next argues that, even if the Court concludes that it can exercise subject matter jurisdiction over AT & T's claims, the Court should abstain from deciding them because the FCC, as the federal agency charged with enforcing the FTA, has either exclusive or primary jurisdiction. Section 253(d), entitled "Preemption," states:

If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation or legal requirement to the extent necessary to correct such a violation or inconsistency.

Nothing in the plain language of § 253(d) purports to confer exclusive jurisdiction with the FCC over the types of claims raised here

by AT & T. When Congress intended to confer exclusive jurisdiction with the FCC over claims arising under other provisions of the FTA, it made its intentions clear in the statute. *See* 47 U.S.C. § 255(f) & 613(h) ("The Commission shall have exclusive jurisdiction with respect to any complaint under this section."). Without question, Congress' failure to do so here is evident, and the only logical inference that can be drawn is that Congress did not confer the FCC with exclusive jurisdiction over claims arising under § 253(a) and (c).

Whether the FCC has primary jurisdiction involves a lengthier analysis. The primary jurisdiction doctrine is a judicially created doctrine that is invoked "when enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The district court, within its discretion, may dismiss or stay the suit pending the resolution of all or some portion of the action by the relevant administrative agency. *See Reiter v. Cooper,* 507 U.S. 258, 268–69, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993); *Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199, 201 (5th Cir.1988). The Court must weigh the parties' need to resolve the action expeditiously against the benefits of obtaining the federal agency's expertise on a particular issue. *See Gulf States Utilities Co. v. Alabama Power Co.,* 824 F.2d 1465, 1473 (5th Cir.), *opinion amended by* 831 F.2d 557 (5th Cir.1987). Significantly, application of the doctrine is particularly appropriate where "uniformity of the certain types of administrative decisions is desirable, or where there is a need for the expert and specialized knowledge of the agencies." *See Wagner,* 837 F.2d at 201 (quoting *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 919 (5th Cir.1983) (internal quotations marks omitted)). The Court can defer to the agency "only if the benefits of agency review exceed the costs imposed on the parties." *Wagner,* 837 F.2d at 201.

Applying these guidelines to the present case, the Court concludes that de-

ferral to the FCC is inappropriate in this case. First, the issue raised here-whether the Ordinance is preempted by federal and/or state law-is a matter of straightforward statutory construction that does not involve issues requiring the FCC's specialized knowledge or expertise. *Cf. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). Second, the City's request to abstain to the contrary, both parties in this case deserve an expeditious review of the issues raised in AT & T's complaint. Deferral to the FCC would likely result in a lengthy delay given that the FCC is required under § 253(d) to provide "notice and an opportunity for public comment" before it may decide preemption issues. Third, AT & T persuasively argues that § 253(d) is simply a mechanism by which the FCC, on its own accord, can raise and adjudicate preemption issues; therefore, § 253(d) does not require or even counsel deferral to the FCC under the primary jurisdiction doctrine. Finally, the City's accusation that AT & T is forum-shopping rings hollow. Preemption claims are within the jurisdiction and competence of the federal judiciary, and as the City is well aware, it is generally the plaintiff's prerogative to choose its forum.

## V. AT & T's MOTION FOR PRELIMINARY INJUNCTION

 A preliminary injunction is a rare and extraordinary remedy that should be granted only if the movant has clearly carried the burden of persuasion on each of the following four elements: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the threatened harm to the defendant; and

(4) the granting of relief does not disserve the public interest. *Sierra Club v. City of San Antonio,* 112 F.3d 789, 793 (5th Cir. 1997).

### A. Substantial Likelihood of Success on the Merits

 Section 253(a) of the FTA proscribes state or local statutes, regulations, or legal requirements that "may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications services." Neither party disputes that Congress intended through the FTA to preempt purely intrastate matters, including local franchising authority. Furthermore, both parties agree that under the FTA municipalities retain their traditional power to regulate and demand compensation for the physical use of their public rights-of-way. As an initial matter, the City argues that the "minimal requirements" of the Ordinance cannot be considered on their face to "prohibit" or "have the effect of prohibiting" competition. The Court flatly rejects that argument. The threat of criminal sanctions and fines for the failure of an entity to obtain municipal consent can indubitably only be described as a prohibition.[9] The limited issue raised in this case, therefore, is the scope of the City's authority under federal and Texas law to regulate a local service provider in a way that is unrelated to the provider's use of the public rights-of-way.

 Section 253(b) of the FTA states: Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis ... requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

47 U.S.C. § 253(b). Although the plain language of section 253(b) appears to grant regulatory authority only to States and not to their political subdivisions, the provision can-

---

**9.** Additionally, the Court disagrees with the City's characterization of the Ordinance as a "small" burden. In fact, the application process appears to be excessively cumbersome; the amount of detail a potential provider must dis-

close under the Ordinance, especially tangential information relating, for instance, to a company's EEOC policies, is nothing short of extraordinary.

not be so narrowly construed. When, as in this case, a statute authorizes state regulation but is silent with respect to the regulatory authority of local governments, the statute cannot be read to preempt all local regulation. *See Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 607, 111 S.Ct. 2476, 2483, 115 L.Ed.2d 532 (1991); *see also In the Matter of Classic Telephone,* 11 F.C.C.R. 13082, 13100–101 (1996). The Supreme Court reasoned in *Mortier* that political subdivisions "are created [by the State] as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them." *Mortier,* 501 U.S. at 607–08, 111 S.Ct. at 2483. Therefore, a State's authority to regulate under a federal statute necessarily includes the authority to delegate local regulation, including regulation for public health, safety, and welfare purposes, to local authorities.[10] *See id.*

■■■■ Having determined that § 253(b) of the FTA does not preempt all local regulation for the public good, the issue then becomes one of state law-how much regulatory authority does the City have under PURA 95? The City argues that this issue is a novel question of state law that the Court should abstain from deciding under the *Pullman* abstention doctrine.[11] *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S.

496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under *Pullman,* federal courts may abstain or defer from deciding federal constitutional issues that are raised in connection with state statutes whose interpretation is unsettled or difficult. *Pullman* abstention is particularly appropriate in "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Word of Faith World Outreach Center v. Morales,* 986 F.2d 962, 967 (5th Cir.), *cert. denied,* 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993). AT & T contends that the Court should not abstain from construing Texas law in this case because *Pullman* abstentions are always improper in federal preemption cases. Although the Fifth Circuit has yet to speak on this issue,[12] other circuit courts have concluded that federal preemption generally does not pose a substantial federal constitutional claim required for *Pullman* abstention. *See Hotel Employees and Restaurant Employees Int'l Union v. Nevada Gaming Comm'n,* 984 F.2d 1507, 1512 (9th Cir.1993) ("*Pullman* abstention is not appropriate because preemption is not a constitutional issue."); *United Services Auto. Ass'n v. Muir,* 792 F.2d 356, 363 (3rd Cir. 1986) ("[A] federal court should not abstain

---

**10.** Having said that, however, it appears that Congress did not anticipate that local governments would attempt to regulate telecommunications service providers for the public good. Indeed, at the urging of municipalities, Congress enacted § 253(c) as a municipal shield "to protect the authority of local governments to control public rights-of-way and to be fairly compensated for the use of public property." *GST. Tucson,* 950 F.Supp. at 971. Section 253 also preserves the rights of municipalities to enforce zoning laws, to regulate the time, place, and manner of the installation, maintenance, operation and repair of a provider's facilities. 141 Cong.Rec. S8172 (1995).

**11.** It is undisputed that AT & T represented to the PUC when applying for its COA that there was no need to apply to any municipality for consent to offer local telephone service. The City contends that the Court should abstain under *Pullman* from deciding whether the PUC has the authority to issue permits to companies which have not sought consent from municipalities. A recent unpublished opinion by the Texas Third Court of Appeals appears to foreclose this

argument. *See City of Plano v. Public Utility Comm'n,* 953 S.W.2d 416 (Tex.App.—Austin, 1997). That court held that PURA 95 does not require the holder of a Service Provider Certificate of Operating Authority ("SPCOA") under PURA 95 § 3.2532 to apply for or obtain municipal consent in order to be granted the SPCOA. *Id.* at 953 S.W.2d at 418–19. The Court appreciates the highly ethical conduct of counsel for SWBT for initially bringing this case to the Court's attention. Of course, the parties to the case immediately followed suit.

**12.** The Fifth Circuit has held, however, that the *Burford* abstention doctrine, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is inapplicable to federal preemption claims because "the basic premise of [*Burford*] abstention-avoiding needless federal court intervention into important matters within a State's jurisdiction to regulate-obviously is lacking." *New Orleans Pub. Serv., Inc. v. City of New Orleans,* 782 F.2d 1236, 1243 (5th Cir.), *opinion withdrawn in part,* 798 F.2d 858 (5th Cir.1986), *and cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987) (citations and internal quotation marks omitted).

under *Pullman* from interpreting a state law that might be preempted by a federal law, because preemption problems are resolved through a nonconstitutional process of statutory construction."), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987); *Federal Home Loan Bank Board v. Empie,* 778 F.2d 1447, 1451 n. 4 (10th Cir.1985) ("[T]he Supreme Court does not appear to view federal preemption questions based only on the Supremacy Clause as the type of constitutional issues that the *Pullman* doctrine counsels courts to avoid."). The Court agrees. The Supremacy Clause itself does not inform the Court's substantive inquiry into the scope of AT & T's federal preemption claim; it merely establishes the primacy of federal law.

Alternatively, the state law issue presented here is neither novel nor difficult. The original PURA became effective in 1976, at which time the Texas Legislature removed the power to regulate telecommunications providers from local governments and conferred such powers on the PUC. *See General Tel. Co. of the Southwest v. City of Perryton,* 552 S.W.2d 888, 892 (Tex.App.—Amarillo 1977, writ ref'd n.r.e.) ("[T]he legislature's exercise of its constitutional authority to vest exclusive original jurisdiction over all state telecommunications in the Public Utility Commission of Texas terminated the regulatory power, both statutory and contractual, theretofore held by municipalities over telephone . systems."). Moreover, PURA 95 unambiguously confers authority on the PUC alone to grant or deny permits to telecommunications providers who wish to operate in Texas. *See* PURA 95 § 3.2531 (Certificate of Operating Authority); PURA 95 § 3.2532 (Service Provider Certificate of Operating Authority); PURA 95 § 3.251 (Certificate of Convenience and Necessity). Under PURA 95, municipalities retain the narrow authority to regulate and demand compensation for the use of city streets and facilities:

> Nothing in this Act shall be construed as in any way limiting the rights and powers of a municipality to grant or refuse franchises to use the streets and alleys within its limits and to make the statutory charges for the use thereof, but a provision of any franchise agreement *may not limit or interfere with any power conferred on the commission* by this Act.
>
> . . .
>
> Nothing in this Act shall restrict or limit a municipality's historical right to control and receive reasonable compensation for access to its public streets, alleys, or rights-of-way or other public property.

PURA 95, § 1.103, 3.2555(f) (emphasis added).

 AT & T correctly argues that municipal consent ordinances that purport to exert general police power regulations over telecommunications providers unlawfully encroach on matters entrusted to the PUC in violation of § 1.103. Once the PUC has made the determination that a provider satisfies the safety, health, and welfare concerns of the State, any municipal ordinance concerned with reviewing that decision has the potential to overrule, or at a minimum, undermine the PUC's ability and discretion to grant operating certificates. The Ordinance, in effect, turns our federal system of government on its head by allowing the City, rather than the State, to be the final authority regarding who can and cannot provide service in a particular locality. The Court is not suggesting that the City does not have an interest in protecting the general health, safety, and welfare of its citizens. Of course it does. But determining whether a particular entity is fit to provide telecommunications services in Texas is a decision that is to be made in the first and only instance by the PUC, and under Texas law, the City may not second-guess that determination. *See Jones v. City of Houston,* 907 S.W.2d 871, 876 (Tex.App.— Houston [1st Dist.] 1995, writ denied) (stating that a home-rule municipality's powers may be limited by the legislature if the legislature's intention to do so appears with "unmistakable clarity"). The City's only legitimate interest under federal and Texas law is to regulate its public rights-of-way, an interest that is in no way implicated by AT & T's activities in Austin.[13]

---

**13.** The opinion issued by the City Attorney, attached as Exhibit 3 to the City's post-hearing brief, is too little, too late. The opinion states that the Ordinance only permits the City Council

### B. Substantial Threat of Irreparable Injury

Although monetary damages normally are insufficient to establish irreparable injury, they may be sufficient if the economic damages are especially difficult to ascertain. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir.1991). In this case, AT & T is attempting to enter the local telephone services market after a decades-long monopoly of local service by a single carrier. AT & T is, by no means, a small or vulnerable corporation, but it is entering a market in which competition among providers is a new phenomenon. Hence, monetary damages for delayed entry into the market would be highly speculative, as there would be no historical record against which to measure lost profits and/or lost market share. The City argues that AT & T "created its own crisis" by failing to apply for a municipal consent when the Ordinance was enacted, and that therefore AT & T cannot complain that the Ordinance is the cause of any irreparable injury. This argument has absolutely no merit. AT & T should not be penalized for refusing to comply with an ordinance the City had no authority in the first instance to impose.

### C. Balance of Hardship

The City identified two interests that would be harmed by enjoining the enforcement of the Ordinance against AT & T. First, the City claims it has an interest in knowing who provides telephone service in the City to protect the health and welfare of its citizens.[14] Second, the City claims it has an interest in receiving compensation from all telecommunications service providers for their use of the City's public rights-of-way. The Court perceives little, if any, harm that would result from granting the preliminary injunction. As for the City's first interest, telecommunications service providers, in particular existing long-distance providers such as AT & T, are already subject to enormous federal and state regulation. Furthermore, the PUC has licensed AT & T as a qualified local telephone service provider, ensuring that the health, safety, and welfare of the City's residents has already been protected. The City's second interest is a red herring. AT & T has no right to access or to use the City's streets or public rights-of-way. Any residual compensation issues-the increased administrative costs the City claims it would incur for coordinating emergency notification among the various local service providers, for instance—may be resolved at a later date. The immediate issue in this case is the authority of the City to delay AT & T's entry into the local telephone services market.

### D. Public Interest

There is no doubt that enforcement of the Ordinance would delay AT & T's entry into the local telephone service market, putting it at a significant competitive disadvantage with SWBT and other local providers. "Congress intended primarily for competitive markets to determine which entrants shall provide the telecommunications services demanded by consumers, and by preempting [state and local regulation] under section 253 sought to ensure that State and local governments implement the 1996 Act in a manner consistent with these goals." *Classic Telephone*, 11 F.C.C.R. at 13096. Enjoining enforcement of the Ordinance will serve the goals of both the FTA and the public interest.

### E. Conclusion

AT & T has clearly carried its burden of persuasion on all of the preliminary injunction factors. The City's interest in regulating local telephone service providers is limited by federal and state law to managing and demanding compensation for the use of the

---

to grant, deny, or revoke its consent to a company seeking to enter the local telephone service market based a power reserved to the City under federal and state law. As the Court has previously recognized, federal and state law abrogate any municipal authority to subject a non-facilities-based provider like AT & T to any kind of local regulation. Therefore, it is axiomatic that the

Ordinance violates § 253(a) of the FTA irrespective of how reasonably the City Council administers the Ordinance.

14. Under Texas law, the City is certainly entitled, and has obviously received, notice that AT & T intends to provide local telephone service in Austin. *See City of Plano*, 953 S.W.2d at 421–22.

City's public rights-of-way. The City's unsupported assertion that a non-facilities-based provider is "using" the City's public rights-of-way is wholly unpersuasive. In fact, it is a metaphysical interpretation of the term "use" that defies logic and common sense. True, neither the FTA nor PURA 95 specifically categorizes or distinguishes between facilities-based and non-facilities-based providers, but the law does make distinctions among the various powers that may be exerted by each successive level of government. In enacting the Ordinance, the City overstepped its bounds.

In accordance with the foregoing, the Court enters the following orders:

IT IS ORDERED that the plaintiff's Motion for Preliminary Injunction [# 10], filed August 4, 1997, is GRANTED as follows: IT IS ORDERED, ADJUDGED, AND DECREED that, pending final disposition of this litigation and subject to the posting by AT & T Communications of the Southwest, Inc. of a bond in the amount of $850.00 (eight-hundred and fifty dollars), the defendant the City of Austin, Texas is hereby enjoined from enforcing Chapter 18–8 of the Austin City Code against the plaintiff AT & T's provision of "telecommunications services" as defined in Chapter 18–8 of the Austin City Code through either resale of telecommunications services purchased from Southwestern Bell Telephone Company or network functionalities purchased from Southwestern Bell Telephone Company;

IT IS FURTHER ORDERED that Southwestern Bell Telephone Company's Motion to Intervene as a Matter of Right [# 7], filed August 4, 1997, is OVERRULED AND DENIED, except that SWBT may file *amicus curiae* briefs on any issue it deems proper,

IT IS FURTHER ORDERED that the defendant the City of Austin's Motion to Dismiss, or in the alternative, to Abate [# 11], filed August 5, 1997, is OVERRULED AND DENIED; and

IT IS FINALLY ORDERED that the defendant the City of Austin's Motion to Strike AT & T's Brief in Response to the City of Austin's Post–Hearing Brief [# 24], filed August 18, 1997, is OVERRULED AND DENIED.