AT&T COMMUNICATIONS OF the
SOUTHWEST, INC., Plaintiff,

v.

CITY OF AUSTIN, TEXAS, Defendant.

No. 97–CA–532.

United States District Court,
S.D. Texas,
Austin Division.

June 4, 1998.

Andrew W. Austin, Sheinfeld, Maley & Kay, Austin, TX, David Graham, Sidley & Austin, Chicago, IL, Thomas K. Anson, Sheinfeld, Maley & Kay, P.C., Austin, TX, for AT&T Communications of the Southwest, Inc., plaintiff.

Peter D. Kennedy, George, Donaldson & Ford, Austin, TX, R. James George, Jr., George Donaldson & Ford, Austin, TX, Andrew Martin, City of Austin, Austin, TX, Todd S. George, George, Donaldson & Ford, Austin, TX, Edward Delabarre, City of Austin, Law Department, Austin, TX, for City of Austin, Tex., defendant.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

SPARKS, District Judge.

This case involves the federal and state preemption *vel non* of a municipal ordinance which requires emerging local telecommunications service providers to obtain municipal consent before they can provide local telecommunications services in the municipality. On August 21, 1997, the Court issued an order in the above-styled cause granting the motion for preliminary injunction filed by AT&T Communications of the Southwest, Inc. ("AT&T"). *See AT & T Communications of the Southwest v. City of Austin,* 975 F.Supp. 928 (W.D.Tex. 1997). In reaching its decision, the Court engaged in a lengthy analysis of § 253 of the Telecommunications Act of 1996[1]

---

1. Pub.L. No. 104–104, 110 Stat. 56, *codified at* 47 U.S.C. § 151 *et seq.* (Supp.1997). Sec-

tion 253(a) forbids the enforcement state and

("FTA" or the "Act") and § 3.2555(f) of the Texas Public Regulatory Act of 1995[2] ("PURA 95") to determine the regulatory authority the City of Austin (the "City") retains over telecommunications providers under federal and Texas law. The Court held that "the City's interest in regulating telecommunications service providers is limited by federal and state law to managing and demanding compensation for the use of the City's public rights-of-way," an interest that is not implicated by non-facilities-based providers such as AT&T. *See AT&T*, 975 F.Supp. at 942–43. Therefore, the Court enjoined the City from enforcing Ordinance No. 970213-E, which enacted Chapter 18-8 of the Austin City Code (the "Ordinance"), against AT&T. *See id.* at 943.

Since the Court entered the preliminary injunction, the parties agreed that a trial on the merits was unnecessary and instead filed joint stipulations on February 20, 1998. The parties agreed to seek a final judgment in this case based on the record created at the evidentiary hearing on the motion for preliminary injunction held on August 7, 19997, as supplemented by the stipulations. In addition, the parties filed post-trial briefs on March 16, 1998, followed by their respective reply briefs on April 6, 1998. On May 8, 1998, Southwestern Bell Telephone Company ("SWBT") filed a motion for leave to file an amicus curiae brief regarding the potential effect a final judgment in this case might have on the calculation of municipal franchise fees, which, as a result of the Court's preliminary injunction ruling, are payable to the City entirely by SWBT, not AT&T. AT&T filed a response to the amicus curiae brief on May 22, 1998, as did the Texas Association of Long Distance Telephone Companies, which filed a motion to leave to file an amicus curiae brief on May 15, 1998.

The factual record currently before the Court is not materially different from the record before the Court at the time the preliminary injunction was entered on August 21, 1997.[3] However, the City presents two arguments it wishes the Court to consider before reaching a final decision in this case. First, the City raises for the first time a jurisdictional argument under the Tax Injunction Act of 1937, and second, the City renews its previous arguments that AT&T is using the public rights-of-way and is therefore subject to the Ordinance. AT&T simply urges the Court to confirm its previous factual findings and legal conclusions contained in its preliminary injunction order. Rather than restate the background of this case and the factual and legal conclusions upon which the Court reached its decision to grant the preliminary injunction, the Court simply refers the parties to its preliminary injunction order. The Court will now direct its attention to the arguments raised in the post-trial briefs.

## I.

The Tax Injunction Act of 1937, as amended, 28 U.S.C. § 1341, provides as follows:

> The district court shall not enjoin, suspend or restrain the assessment, levy or

---

local statutes and regulations that "prohibit" or "have the effect of prohibiting" the ability of any entity to provide interstate and intrastate telecommunications services; § 253(c) reserves the right of municipalities to manage and demand compensation for the use and occupancy of the public rights-of-way. *See* 47 U.S.C. § 253(a) & (c).

2. TEX.REV.CIV.STAT. art. 1446c-*o* (Vernon 1997). Although § 3.2555(f) reserves to municipalities the right to control and receive compensation for the use of its public rights-of-way, it prohibits municipalities from enacting franchise agreements that limit or inter-

fere with any power conferred by statute on the Texas Public Utility Commission ("PUC"). *See* PURA 95, § 1.103, 3.2555(f). After the Court entered its order on the motion for preliminary injunction, the statute was recodified as a part of the Texas Utilities Code. For the sake of consistency with the Court's preliminary injunction order, the Court uses citations to the statute prior to recodification.

3. The stipulations consist of (1) a diagram demonstrating the operation of AT&T's local telephone services in the City, and (2) portions of the interconnection agreement between SWBT and AT&T.

collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The City's arguments regarding the Tax Injunction Act are somewhat difficult to discern. On the one hand, the City argues the franchise fees sought under the Ordinance are not tied to a local telephone provider's use of the public rights-of-way, and therefore the fees sought are a tax under the Tax Injunction Act. The City relies on an unpublished opinion, *City of Chattanooga v. BellSouth Telecommunications, Inc.*, 1 F.Supp.2d 809 (E.D.Tenn. 1998), for the proposition that the franchise fees sought by the City are "taxes" within the meaning of § 1341. Under this theory, the City contends the Court lacks subject matter jurisdiction over the case. On the other hand, the City argues that the franchise fee may very well be tied to use of the public rights-of-way, in which case the franchise fees fall under the protective umbrella of § 253(c) of the FTA. Under this theory, the City argues that AT&T loses on the merits because the Ordinance is a valid exercise of the powers reserved to municipalities under the FTA and PURA 95 to regulate and demand compensation for the use of the City's public rights-of-way.

The City's jurisdictional argument under the Tax Injunction Act appears to be nothing more than a desperate, last-ditch effort to avoid the conclusions the Court reached in its preliminary injunction order.[4] AT&T is not challenging the fees contained in the Ordinance, and this case does not concern the propriety of fees the City seeks to impose under the Ordinance. Rather, the question before the Court is whether the City, through the enactment of the Ordinance, has erected a barrier to entry into the local telecommunications services market in violation of FTA § 253(a). *See AT&T*, 975 F.Supp. at 939. The answer to that question involves an analysis of the City's authority to regulate local telecommunications service providers under federal and state law, and whether the Ordinance imposes some restrictions or requirements that conflict with the City's limited authority. *See id.* at 939–41. What the Court found objectionable about the Ordinance was the City's attempts to impose onerous regulatory requirements on non-facilities-based providers and to force such entities to obtain municipal consent before providing local telephone service—under the threat of criminal sanctions and fines for noncompliance—when the City has no authority to do so under federal and state law. *See id.* Therefore, the issues in this case have nothing to do with the appropriateness of the fees contained in the Ordinance, and nothing in this opinion or in the Court's preliminary

---

**4.** Indeed, the City's lack of conviction in this argument is painfully transparent. First, there is a noticeable lack of factual support in the record for the contention that the fees sought under the Ordinance are taxes. Second, the City admits that its Director of Telecommunications and Regulatory Affairs described the "per line" charge methodology adopted in the Ordinance as compensation for use of the public rights-of-way. *See City of Austin's Post–Trial Brief*, at 4 & n. 4. This "per line" methodology was adopted over a fee calculation based upon gross revenue, which methodology was found objectionable in *City of Chattanooga*, at 814 (Memorandum Opinion). Furthermore, the Fifth Circuit recently characterized franchise fees related to the operation of television cable systems as "rent," not taxes. *See City of Dallas v. Federal Communications Comm'n*, 118 F.3d 393, 397–98 (5th Cir.1997) ("Franchise fees are not a tax, however, but essentially a form of rent: the price paid to rent of public right-of-ways [sic]."). Finally, even if the Court were inclined to construe the Ordinance as imposing a tax on telecommunications service providers, it appears the Ordinance may be illegal under Texas law. *See* TEX. TAX CODE ANN. § 301.004(a) ("a municipality or other political subdivision of the State may not impose an occupation tax or any charge for the privilege of doing business on a telephone company taxed under chapter 171 of this Code [the corporate franchise tax]."). The Court finds it somewhat disingenuous for the City to argue that the Court lacks subject matter jurisdiction over this case because the City is attempting to impose an illegal tax on local telephone service providers.

injunction order is intended or should be construed as a comment on how franchise fees should be levied against facilities-based providers. To the extent an injunction against the Ordinance necessarily enjoins the City's assessment of the franchise fees contained in the Ordinance against AT&T, the Fifth Circuit has made it clear that this kind of tangential and incidental connection to an alleged taxation does not deprive the Court of subject matter jurisdiction. *See Pendleton v. Heard*, 824 F.2d 448, 451–52 (5th Cir.1987) (holding that courts must look to the primary purpose of the lawsuit when determining whether the case falls within the scope of the Tax Injunction Act).

## II.

■ The City reiterates its previous position that AT&T is subject to the Ordinance because it physically occupies the public rights-of-way: when AT&T resells or rebundles SWBT's services, AT&T transmits signals consisting of electrons and lightwaves, which will travel through copper and fiber optic lines, cables, and link switches located *in* (as opposed to *above*) the City's rights-of-way. The City contends these electrons and lightwaves constitute both a use and an occupancy of the public rights-of-way. The distinction between "in" and "above" is due to the Court's reliance in its preliminary injunction order on *In the Matter of Definition of a Cable Television System*, 5 F.C.C.R. 7638, 1990 WL 603007, ¶ 28 (1990), a Federal Communications Commission ("FCC") decision which held that the "mere passing over of ... a right-of-way by electromagnetic radiation" does not constitute the "use" of the right-of-way. The City argues the FCC decision, which involves wireless communication passing over a right-of-way, is materially different from the situation here in which communication travels through wires located in the City's rights-of-way.

This argument borders on the absurd. There is no dispute in the record that SWBT owns the local exchange network that occupies the City's public rights-of-

way. *See City of Austin's Post Trial Brief* at 6. As the FCC First Report and Order makes clear, and as the interconnection agreement between AT&T and SWBT confirms, AT&T, either as a pure reseller or as a purchaser of unbundled network elements, has no ownership or operational rights over SWBT's physical facilities. *See AT&T*, 975 F.Supp. at 934 & n. 2; First Report and Order, *Implementation of the Local Competition Provision in the Telecommunications Act of 1996*, CC Docket No. 96-98 (August 8, 1996) ¶ 268 & n. 573 ("The ability of other carriers to obtain access to a network element for some period of time does not relieve the incumbent LEC of the duty to maintain, repair, or replace the unbundled network element. We clarify that title to network elements will not shift to requesting carriers."); *see also* Stipulations, Exhibit B, *Attachment 3 Maintenance—Resale* generally & ¶ 1.1 (interconnection agreement providing that "SWBT will provide repair, maintenance, testing, and surveillance for all Resale services (3)27"); Stipulations, Exhibit B, *Attachment 8 Maintenance— Unbundled Network Elements* generally & at ¶ 1.1 (interconnection agreement indicating that "SWBT will provide repair, maintenance, testing, and surveillance for all unbundled Network Elements ...").

Therefore, the manner in which the electrons travel—in, through, out above, below, beyond, between, around, over, under, on, within, without—is irrelevant. The essential point is that AT&T will not erect telephone poles or dig holes in the City's streets in order to install, maintain, operate, or repair SWBT's network (*i.e.*, wires, cables, and switches) because those rights and duties belong to SWBT, not to AT&T. When AT&T purchases wholesale services and network functionalities from SWBT, SWBT provides those services to AT&T through SWBT's network, and AT&T then resells those services to consumers. True, when AT&T's customers place a local telephone call, electromagnetic radiation travels through SWBT's network, but that is not to say that AT&T owns the electromagnetic radiation traveling through the

network (a question which is better left to the ruminations of philosophers rather than a court of law). The Court once again rejects the City's bizarre definition of the term "use."

### III.

In its amicus brief, SWBT expresses some concern regarding the appropriate methodology for passing through to AT&T the municipal franchise fees paid by SWBT to the City. *See SWBT's Amicus Brief* at 2. SWBT presents several hypothetical situations which purport to establish that municipal fees cannot passed through to AT&T "on a competitively neutral basis, as required by 47 U.S.C. Section 253(c), using any known compensation methodology." *See id.* SWBT requests that

> the Court craft its final judgment in this case so as to allow the City to require AT&T to make 'fee per line' payments directly to the City with respect to AT&T's provision of telecommunications services to end user customers over lines located in the rights-of-way that are leased from SWBT or others. Such a limitation on the Court's ruling would not mean that the City could subject AT&T to every provision of Chapter 18–8.

*Id.* at 6.

■ In the preliminary injunction order, the Court denied SWBT's motion to intervene as a matter of right because (1) AT&T made no claims or requests for relief regarding any compensation or franchise fees issues existing between AT&T and SWBT or between SWBT and the City, and (2) SWBT had an undisputed obligation to pay franchise fees under the Ordinance. *See AT & T,* 975 F.Supp. at 936. These two important facts remain. The Court reiterates its conclusion that inter-carrier compensation issues generally, and "pass through" payments in particular, are outside the scope of this case and § 253(c), as Congress directed the competitive neutrality requirement of § 253(c) to municipalities, not competing carriers. *See* 47 U.S.C. § 253(c) ("Nothing in this

section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis . . ."). Furthermore, it is axiomatic that the Court cannot subject AT&T to *any* portion of the Ordinance without first concluding that AT&T's activities in Austin warrant municipal regulation, a proposition the Court has rejected.

Given the fact that the issues presented in ·this case are a matter of first impression, and in light of the concerns raised by SWBT in its amicus brief, the Court emphasizes the limited nature of its holding. This case involves the City's ability to require AT&T to submit to regulation when AT&T provides telecommunications services in Austin solely through the resale and rebundling of SWBT services and network elements. AT&T only seeks declaratory and injunctive relief enjoining the enforcement of the Ordinance. Nothing in the Court's opinion affects the rights or obligations existing between AT&T and SWBT, and any concerns regarding the alleged competitive impacts of "pass Though" payment methodologies (or the lack thereof) should be resolved in another case.

For the foregoing reasons, the Court enters the following order:

IT IS ORDERED that the defendant the City of Austin, Texas is hereby enjoined from enforcing Chapter 18-8 of the Austin City Code against the plaintiff AT&T Communications of the Southwest, Inc.'s provision of "telecommunications services" as defined in Chapter 18-8 of the Austin City Code through either resale of telecommunications services purchased from Southwestern Bell Telephone Company or network functionalities purchased from Southwestern Bell Telephone Company.