AT & T COMMUNICATIONS OF THE SOUTHWEST, INC., et al., Plaintiffs,

v.

CITY OF DALLAS, TEXAS, Defendant.

No. CIV.A.3:98–CV–0003–R.

United States District Court, N.D. Texas, Dallas Division.

May 17, 1999.

*Dallas*, at 857; *AT & T v. Austin*, 975 F.Supp. at 942.

**25.** *See AT & T v. Dallas*, at 857.

Emily Williams, Washington, DC, for Association of Local Telecommunications Services.

George Harmon Tarpley, Sheinfeld Maley & Kay, Dallas, TX, Andrew William Austin, Sheinfeld Maley & Kay, Austin, TX, for AT&T Communications of Southwest, Inc.

Richard L. Crozier, Davidson & Troilo, Austin, TX, for Taylor Communications, Inc., USLD Communications, Inc., Caprock Communications Corp., Golden Harbor of Texas, Inc., Westel Inc.

Michael Anthony Shaunessy, Bickerstaff Heath Smiley Pollan Kever & McDaniel, Austin, TX, Diane M. Barlow, Casey Gentz & Sifuentes, Austin, TX, for Teligent, Inc.

E. Russell Nunnally, Sally Christine Helppie, Tammy Sue Wood, Bell Nunnally & Martin Dallas, TX, Anthony V. James, Irving, TX, Steven Gill Bradbury, Theodore W. Ullyot, John P. Frantz, Kirkland & Ellis, Washington, DC, for GTE Southwest Inc.

Weston C. Loegering, Robert Edwin Davis, Hughes & Luce, Dallas, TX, David Randall Johnson, Dallas, TX, for Southwestern Bell Telephone Co.

Lionel M. Schooler, Gilpin Paxson & Bersch, Houston, TX, for Sprint Communications Co., L.P.

Ronald D. Stutes, Dallas City Attorney's Office, Dallas, TX, Richard Thomas Urbis, Michael Charles Fayz, Carl Hermann von Ende, Thomas G. Parachini, Miller Canfield Paddock & Stone, Detroit, MI, for City of Dallas.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Before this Court are Motions for Summary Judgment filed by consolidated Plaintiffs AT & T Communications of the Southwest, Inc. ("AT & T"), and Teligent, Inc. ("Teligent"), seeking final declaratory and permanent injunctive relief against Defendant City of Dallas ("City").[1] For the reasons stated below, both motions are **GRANTED.** Thus, the City's Amended Counterclaim against AT & T is **DISMISSED,** and AT & T's Motion to Strike or Dismiss Amended Counterclaim of the City of Dallas is **DENIED AS MOOT.** In addition, Teligent's equal protection, due process, ultra vires, and other claims raised in Counts Four, Six, Seven, Eight, and Nine of its Complaint for Declaratory Relief are **DISMISSED AS MOOT.**

### I. BACKGROUND

On April 9, 1998 and July 7, 1998, this Court issued preliminary injunctions sought by AT & T and Teligent, respectively, against the City. *See AT & T Communications of the Southwest, Inc. v. City of Dallas,* 8 F.Supp.2d 582 (N.D.Tex.1998) *("City of Dallas I"); AT & T Communications of the Southwest, Inc. v. City of Dallas,* 52 F.Supp.2d 756 (N.D.Tex.1998) *("City of Dallas II").* These injunctions enjoined the City from requiring AT & T and Teligent to obtain a franchise from the City to provide telecommunications ser-

---

1. AT & T and the City filed a Joint Submission of AT & T's Motion for Summary Judgment on August 14, 1998 consisting of AT & T's motion, the City's response, consolidated plaintiff Southwestern Bell Telephone Company's ("SWBT") response, GTE Southwest Inc.'s response, AT & T's reply to the City's response, AT & T's reply to SWBT's and GTE's responses, reply of consolidated plaintiffs Caprock Communications Corp. ("Caprock"), Golden Harbor of Texas, Inc., and Westel to SWBT's and GTE's responses, and a Joint Appendix. With leave of Court, SWBT filed a surreply to AT & T's reply on September 21, 1998, and AT & T filed a reply to SWBT's surreply on October 14, 1998.

Teligent and the City filed a Joint Submission of Teligent's Motion for Summary Judgment on October 28, 1998, consisting of Teligent's motion, the City's response, Teligent's reply, and a Joint Appendix.

vices in Dallas. The injunctions were granted because the federal Telecommunications Act of 1996 ("FTA") § 101(a), 47 U.S.C.A. § 253(a) (West Supp.1998), and the Texas Public Utilities Regulatory Act ("PURA"), TEX. UTIL. CODE ANN. §§ 52.002, 14.008 (West 1998), largely preempted the City's authority to regulate telecommunications providers except for the City's authority to manage or control its public rights-of-way and to require fair and reasonable compensation from telecommunications providers for use of the City's public rights-of-way.

The injunction granted for AT & T enjoined the City from interfering with AT & T's plan to offer its AT & T Digital Link ("ADL") service in a City right-of-way. AT & T already has a franchise under City Ordinance 18613, which permits AT & T to use the City's rights-of-way to offer long-distance telephone service. When AT & T approached the City and requested permission to use a specific right-of-way already covered by Ordinance 18613 to offer ADL, a local service, the City refused and informed AT & T that it may offer ADL in the right-of-way only if AT & T agreed to a new franchise agreement to replace the one granted by Ordinance 18613. AT & T brought this case because offering ADL in the right-of-way without a franchise would have subjected AT & T to criminal prosecution for offering telecommunications services without a franchise under Dallas City Code § 43–117. Because this Court agreed with AT & T that the City's refusal to grant AT & T permission to use the right-of-way for ADL without a new franchise, and that the City's proposed franchise requirements both violated the FTA and PURA, the City was enjoined from requiring AT & T to agree to a new franchise before offering ADL and from criminally prosecuting AT & T for offering ADL without agreeing to a new franchise. See City of Dallas I, 8 F.Supp.2d at 595. In offering ADL, AT & T was limited to the specific right-of-way governed by Ordinance 18613, and was ordered to comply with its conditions.

Similarly, the injunction granted for Teligent enjoined the City from requiring Teligent to obtain a franchise before offering local service in Dallas. While both AT & T and Teligent offer local service to Dallas customers, Teligent is different from AT & T because Teligent provides its service using wireless technology involving microwave transmission and base stations placed on private property. While Teligent may lease from a carrier certain facilities located in the City's rights-of-way, Teligent does not, and has no plans to, own or occupy *any* City right-of-way. Despite this distinction, the City refused to permit Teligent from offering its services and refused to enter into a 9–1–1 agreement with Teligent without Teligent first obtaining a franchise. Without a franchise from the City, Teligent is precluded from obtaining a 9–1–1 agreement, which is required under the terms of the certificate of operating authority issued to Teligent by PUC. *See City of Dallas II* at ——, 1998 WL 386168, *2. Per City Resolution 961121, the City has refused to enter into a 9–1–1 agreement with non-franchised service providers. Because of these circumstances, Teligent reluctantly agreed to the franchise, which was granted per Ordinance 23325, and then brought this action against the City. In granting the injunction, this Court held that Teligent did not "use" the City's rights-of-way, and that the City's franchise requirements violated federal and state law. *See City of Dallas II* at ——, 1998 WL 386168, *4–5. The City was enjoined from requiring Teligent to apply for and obtain a franchise before offering telecommunications services in Dallas, requiring Teligent to obtain a franchise before entering into a 9–1–1 agreement with the City, and enforcing Ordinance 23325, by which the City had granted Teligent a franchise to provide telecommunications services in the City.

AT & T and Teligent now seek final declaratory and permanent injunctive relief against the City based on the preliminary injunctions. AT & T seeks to

prevent the City from requiring a new franchise agreement covering ADL or any other service it may offer in the right-of-way. Teligent seeks to invalidate Ordinance 23325 and enjoin the City from requiring Teligent to agree to any franchise agreement at all. Because the factual records of both cases have not changed since the injunctions were granted, the Court will not revisit the facts and will address the arguments raised by the parties in relation to the motions for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying those portions of the record that may demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. Once this burden is met, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968)) (internal quotation marks omitted) (alteration in original). In considering a motion for summary judgment, a court must view the facts and draw all reasonable inferences in favor of the party opposing the motion. *See Walker v. Sears Roebuck*, 853 F.2d 355, 358–59 (5th Cir.1988). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247, 106 S.Ct. at 2510, 91 L.Ed.2d 202 (emphases in original).

■ The City initially argues in its response to AT & T's motion that AT & T's motion should be denied or held in abeyance until the City's requested discovery is completed.[2] *See* City's Resp. at 2. The City claims under Fed.R.Civ.P. 56(f)[3] that the factual record is incomplete on several essential issues relating to AT & T's claims and the City's defenses, and that discovery will test the accuracy of AT & T's representations and arguments. Specifically, the City argues that AT & T has failed to provide a "precise or complete description of AT & T's use of the right-of-way," City's Resp. at 4, and that "the factual record is plainly inadequate on the issues which divide the parties concerning the scope of the City's authority and the standards set out in both the subject federal and state statutes at issue," *id.* at 5—e.g., whether or not some or all of the franchise require-

---

**2.** The City made the same argument in its response to Teligent's motion. However, after Teligent's motion was filed, Teligent and the City stipulated to strike this argument. *See* Stipulation ¶ 4 at 1–2. Thus, the Court will not consider this argument in relation to Teligent's motion.

**3.** Rule 56(f) provides that:

**(f) When affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

ments prohibit or have the effect of prohibiting AT & T from providing the services it has offered or intends to offer in Dallas. The City seeks discovery on AT & T's financial information, arguing that the determination of whether or not the franchise requirements prohibit or have the effect of prohibiting AT & T from providing telecommunications services depends on such discovery.

The City's arguments are unpersuasive because the factual record is more than adequate and summary judgment is appropriate in this case. First, the City's Rule 56(f) request for denying or suspending AT & T's motion in order to conduct discovery lacks merit because the City has had more than sufficient time and opportunity to conduct discovery. *See Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1031 (5th Cir.1983) (holding that a Rule 56(f) request for discovery can be denied if discovery is dilatorily sought). AT & T filed its complaint on January 5, 1998, and this Court issued a preliminary injunction against the City on April 9, 1998. On April 20, 1998, this Court issued an accelerated scheduling order establishing July 20, 1998 as the deadline for all discovery. Although that deadline was extended to August 28, 1998, the City served no discovery requests until July 30, 1998, when it served its first set of interrogatories and request for document production on AT & T. These facts reveal that the City's Rule 56(f) request is dilatory, and its request to deny or to hold in abeyance AT & T's Motion is without merit.

Second, even if the City had served timely discovery requests on AT & T, the City cannot show that evidence obtained from such discovery will enable it to withstand summary judgment. The City's argument that discovery is necessary because AT & T has failed to provide a complete or precise description of the right-of-way at issue is disingenuous because the right-of-way at issue has been clearly identified since the beginning of this case. *See* AT & T's Compl. ¶ 17 at 6–7; AT & T's First Am. Compl. ¶ 17 at 6–7; AT & T's Mot. for Prelim. Inj. Ex. 4, ¶ 3

at 1 (Aff. of Ray Pottorf) ("a three foot-wide strip of Dallas right-of-way approximately 5.6 miles in length, running along portions of Bryan, Live Oak, Hubert, Oram, Delmar, and Coit Roads in Dallas."). In its first set of interrogatories and request for production of documents served on AT & T, the City seeks documents relating to the use of any and all rights-of-way in which AT & T offers or plans to offer services. *See* AT & T's J.A. Ex. 1, Ex. A. Such information is irrelevant to AT & T's use of the specific right-of-way at issue in this case, and is immaterial to the disposition of AT & T's Motion. *See Paul Kadair, Inc.*, 694 F.2d at 1030 (stating that discovery is unnecessary if the discovery sought is unlikely to produce facts necessary to withstand summary judgment).

Finally, the factual record is more than adequate on the issues of the City's authority and the federal and state law limiting such authority. AT & T's requested declarations are based on the City's proposed franchise requirements, which impose numerous conditions on AT & T unrelated to AT & T's use of the City's right-of-way. This Court has already ruled that the City's authority to regulate AT & T is limited by the FTA and PURA to regulating the use of the City's rights-of-way. *See City of Dallas I*, 8 F.Supp.2d at 591–92. This Court also found that the City's proposed franchise requirements prohibit or have the effect of prohibiting AT & T from offering ADL. *See id.* at 594–95. The factual record has not changed since that decision, and the City has failed to present any relevant facts that would create a genuine issue of material fact as to the prohibitory effect of the franchise requirements. The City's argument for additional discovery is just a futile attempt to expand the issues in this case to avoid summary judgment. Because of these reasons, the City's Rule 56(f) request to deny or to hold in abeyance AT & T's Motion is denied.

## B. Preemption of the City's Authority

### 1. Preemption Under FTA § 253(a)

■ The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... or which shall be made under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Thus, state law that conflicts with federal law is "'without effect.'" Cipollone v. Liggett Group, Inc., 505 U.S. 504, 515, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981)). "State law is displaced by federal law where (1) Congress expressly preempts state law; (2) congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme; or (3) state law conflicts with federal law or interferes with the achievement of federal objectives." Hodges v. Delta Airlines, Inc., 44 F.3d 334, 335–36 n. 1 (5th Cir.1995) (en banc). Only express preemption is involved in this case.

Section 253 of the FTA provides in relevant part:

§ 253. Removal of barriers to entry

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide interstate or intrastate telecommunications service.

. . . . .

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

These sections have been construed to broadly preempt state or local regulation of telecommunications providers. See City of Dallas I, 8 F.Supp.2d at 591; AT & T Communications of the Southwest, Inc. v. City of Austin, 975 F.Supp. 928, 939 (W.D.Tex.1997) (Sparks, J.) ("City of Austin I"). However, § 253(c) of the FTA is a savings clause that does not preempt state and local governments' authority to manage their rights-of-way and to require fair and reasonable compensation from telecommunications providers for use of the rights-of-way. See City of Dallas I, 8 F.Supp.2d at 592.

### a. Preemption of the City's Franchise Requirement as Applied to AT & T

Under the above interpretation of §§ 253(a) and (c), the City cannot impose its form franchise requirement on AT & T. Although the City does have authority under the FTA to impose a franchise requirement on telecommunications providers, the City does not "have the authority to grant or deny that franchise based on its own discretion[;] granting a franchise may only be conditioned on a [provider]'s agreement to comply with the [C]ity's reasonable regulations of its rights-of-way and the fees for use of those rights-of-way." Id. at 592–93. The City's form franchise requirement seeks to impose on AT & T conditions that are unrelated to the use of the City's right-of-way for ADL—e.g., disclosure of detailed financial and operational information, dedication of fiberoptic strands and conduits to the City for the City's free and exclusive use, submission to detailed City audits, notification to the City of all communications with the FCC, SEC, and PUC related to services provided in Dallas, and payment of four percent of all AT & T revenue, of whatever source, arising out of AT & T's operations in Dallas. See Mot. for Prelim. Inj., Aff. of Russell Morgan ("Morgan Aff.") at ¶¶ 9–11; id. Ex. 1, §§ 8, 9, 11. To repeat this Court's earlier holding, these conditions are unrelated to the City's management, or fair and reasonable compensation for the

use, of the City's rights-of-way, and are beyond the scope of the City's authority under § 253(c). *See City of Dallas I,* 8 F.Supp.2d at 593.

The City argues that AT & T is not entitled to summary judgment on its § 253(a) preemption claim for two reasons. First, the City argues that the plain language of § 253 creates a "safe harbor" for state and local requirements satisfying § 253(c), and preempts only those state and local requirements that *both* fall outside § 253(c) *and* are shown to have the prohibitory effect proscribed by § 253(a). Under this construction of § 253, the City argues that "as long as a local right-of-way management or compensation requirement satisfies § 253(c), it is *immune from attack* under § 253, *even if* the requirement otherwise 'prohibit[s] or ha[s] the effect of prohibiting' service within the meaning of § 253(a)." City's Resp. at 8. Because the proposed requirement falls within this safe harbor, the City adds, it is immune from attack under § 253(a) and is not preempted.

Second, the City argues that, if the Court holds that the franchise requirement is not within the safe harbor of § 253(c), summary judgment should nevertheless be denied because AT & T has not presented facts that suggest that compliance with the franchise requirement would "prohibit or have the effect of prohibiting" AT & T from providing service within the meaning of § 253(a). The City argues further that while the key issue in this case is whether or not the franchise requirement prohibits or has the effect of prohibiting AT & T from providing ADL, AT & T has failed to present any evidence that would suggest that it is unable to meet the requirement. The City asserts that simply because the franchise requirement is burdensome or costly does not mean that it is prohibitive within the meaning of § 253(a).

■ These arguments are unpersuasive. The plain language of § 253(a) broadly preempts state or local regulations that prohibit or have a prohibitory effect on telecommunications providers. *See id.* at

591. Whether or not § 253(c) is a "safe harbor" that allows any municipal regulation satisfying § 253(c) to be immune from a preemption attack under § 253(a) if the regulation also prohibits or has the effect of prohibiting service is irrelevant because the City has not shown, and cannot show, that its franchise requirement satisfies § 253(c). The City has presented no evidence that connects its franchise requirement with the management of and compensation for the use of its rights-of-way. Absent such evidence, there is no genuine issue of material fact as to the preemption of the City's franchise requirement imposed on AT & T.

■ The City's backup argument to its dubious construction of § 253—that summary judgment should be denied because AT & T has failed to present evidence of the franchise requirement's prohibitive effect—is disingenuous because the record contains sufficient evidence of such prohibitive effect. The undisputed evidence shows that the City has represented to AT & T that without a new franchise governing ADL, AT & T may not offer ADL in the right-of-way at issue. *See* Morgan Aff. Ex. 1. AT & T will be subject to criminal prosecution if it decides to evade the City's requirements and offer ADL without a franchise. *See City of Dallas I,* 8 F.Supp.2d at 594–95; City Code §§ 43–117, 43–118. Such evidence is sufficient proof of the requisite prohibitive effect that triggers the preemptive force of § 253(a). *See City of Austin I,* 975 F.Supp. at 939. Because the City has failed to rebut AT & T's arguments and evidence, the City has not created a genuine issue of material fact on AT & T's § 253(a) preemption claim.

### b. SWBT's and GTE's Objections to Declarations Sought by AT & T

Consolidated Plaintiff Southwestern Bell Telephone Company ("SWBT") has filed a response to AT & T's Motion objecting to two declarations sought by AT & T. Consolidated Plaintiff GTE Southwest, Inc.

("GTE") has joined in and adopted SWBT's response. SWBT and GTE, as incumbent local exchange carriers ("ILECs"), object to the following declarations sought by AT & T:

e. franchise provisions managing use of City rights-of-way must be related to the physical use of the rights-of-way by a local service provider with facilities occupying such rights-of-way, [and]

f. Any fee the City charges AT & T that is not based on AT & T's physical occupation of the City's rights-of-way is an economic barrier to entry and violates § 253(a) of the FTA.

AT & T's Mot. at 2–3.

■ SWBT objects to these declarations because SWBT believes that, if granted, they will prevent the City from regulating AT & T for AT & T's use of an ILEC's unbundled network elements ("UNEs") that occupy the City's rights-of-way. Relying on FCC decisions construing sections of the FTA relating to universal service and eligibility of Bell operating companies to enter the interLATA long distance market, *see In re* Federal–State Joint Board on Universal Service, 12 F.C.C.R. 8776, 1997 WL 236383 (F.C.C. May 8, 1997) ("Universal Service"); *In re* Application of Ameritech Michigan Pursuant to Section 71 of the Communications Act of 1934, As Amended, to Provide In–Region, Inter-LATA Services in Michigan, 12 F.C.C.R. 20543, 1997 WL 522784 (F.C.C. Aug. 19, 1997) ("Ameritech"), SWBT argues that when a competitive local exchange carrier ("CLEC") like AT & T offers telecommunications service by purchasing access to an ILEC's UNEs located in public rights-of-way, the CLEC is making "use" of such public rights-of-way, subjecting the CLEC to municipal right-of-way regulation consistent with FTA § 253(c). Granting the above declarations, SWBT argues, would result in "a ruling that *as a matter of law* the City of Dallas has no authority to subject AT & T to reasonable rights-of-way use regulations and fees based on its purchase of UNEs." SWBT's Surreply at 6–7. In addition, SWBT argues that

granting the declarations at issue would result in unpredictable revenue for municipalities, and would conflict with § 253(c)'s competitive neutrality requirement by placing ILECs at a competitive disadvantage against CLECs because of the manner in which municipal fee payments are collected from customers pursuant to Texas law. Despite the fact that *City of Austin I* already rejected this argument, SWBT argues that *City of Austin I* incorrectly decided this issue by misinterpreting the FCC opinion upon which its holding was based. *See City of Austin I,* 975 F.Supp. at 934 & n. 2. For these reasons, SWBT and GTE argue that AT & T's requested declarations should be denied and that this Court should hold that AT & T's purchase of access to SWBT's UNEs is "use" of the City's rights-of-way.

As noted above, SWBT's argument was already rejected by *City of Austin I,* which held that a CLEC's purchase of access to an ILEC's UNEs located in a municipality's rights-of-way did not constitute "use" of the rights-of-way under § 253(c) because the CLEC did not own or occupy any facilities in the right-of-way. *See id.; AT & T Communications of the Southwest, Inc. v. City of Austin,* 40 F.Supp.2d 852, 855–56 (W.D.Tex.1998) (Sparks, J.) ("*City of Austin II* "). *City of Austin I* is equally applicable here, but even if it did not specifically reject SWBT's argument already, SWBT's argument fails as speculative and unfounded. First, SWBT's reliance on Universal Service and Ameritech, which held that a UNE obtained from an ILEC is the CLEC's "own facility" in other contexts, is misplaced. Universal Service held that under 47 U.S.C.A. § 214(e)(1)(A), which requires telecommunications carriers eligible to receive universal service support to provide services "either using its own facilities or a combination of its own facilities and resale of another carrier's services," "when a requesting carrier obtains an unbundled element, such element ... is the requesting carrier's 'own facility' for purposes of Section 214(e)(1)(A) because the requesting carrier has the 'exclusive use of that facili-

ty for a period of time.'" Universal Service at ¶ 158. Similarly, in Ameritech, the FCC held that under FTA § 271(c)(1)(A), which sets forth the standards that must be· met by a Bell operating company ("BOC") before it may receive authorization from the FCC to enter the interLATA long distance service market, a UNE obtained by a CLEC from a BOC is the CLEC's "own telephone exchange service facility" for purposes of FTA § 271(c)(1)(A). The issue in Universal Service and Ameritech was whether a CLEC's operation of a UNE purchased from an ILEC or BOC constituted *either* the CLEC's own facility *or* a resale of another carrier's facility per FTA §§ 214(e)(1)(A) and 271(c)(1)(A). These sections, and Universal Service and Ameritech, do not relate to state or municipal regulations authorized by FTA § 253(c) based on a telecommunications provider's use—physical occupancy—of public rights-of-way, and are inapposite. The more pertinent authority is *In re* Entertainment Connections, Inc., 13 F.C.C.R. 14277, 1998 WL 344168 (F.C.C. June 30, 1998) ("ECI"), in which the· FCC held that under the Cable Act, 47 U.S.C.A. § 522, which contains language similar to FTA § 253(c),[4] a cable company did not make "use of a public right-of-way" when it provided its signals over an ILEC's lines, which did use public rights-of-way. ECI ¶ 62. The FCC, citing *City of Austin I* in support, concluded that ECI, a CLEC, was not using public rights-of-way when its signals were transmitted by Ameritech, an ILEC, to ECI's subscribers using Ameritech's facilities that were in public rights-of-way. *See id.* As correctly noted by AT & T, ECI lends further support to the conclusion that a CLEC's purchase of access to an ILEC's UNEs located in public rights-of-way does not constitute "use" of public rights-of-way.

Moreover, SWBT's assertion that a CLEC "uses" a right-of-way by purchasing access to a UNE located in a right-of-way

is unconvincing. Although a CLEC's purchase of access to a UNE from an ILEC gives the CLEC exclusive control over the functionality over the UNE, the ILEC still retains ownership of the UNE and will continue to repair, maintain, and operate it even when the CLEC purchases exclusive access. *See* SWBT's Resp. at 7; AT & T's Reply at 4 & n.3 and sources cited. SWBT does not explain why, on one hand, a CLEC's purchase of access to an ILEC's UNEs to rebundle services is use of the right-of-way, but on the other hand, a CLEC's purchase and resale of an ILEC's retail services is not such use. As AT & T correctly argues, "the fact that AT & T controls its own service offering when it rebundles SWBT's UNEs is of absolutely no consequence to the issue of whether AT & T's purchase of UNEs from SWBT is a physical 'use' of the [rights-of-way] for purposes of § 253." AT & T's Reply to SWBT's Surreply at 5.

Finally, SWBT's remaining arguments are unfounded. Contrary to SWBT's unsupported assertions, granting the declarations at issue will not result in a ruling that as a matter of law the City has no authority to subject AT & T to rights-of-way regulation based on its purchase of UNEs. AT & T is not seeking a declaration that the City completely lacks authority to regulate AT & T's purchase of access to UNEs. *See* AT & T's Reply to Surreply at 7–8. Should AT & T in the future interconnect a SWBT-owned UNE with an AT & T facility that uses the City's rights-of-way, the declarations at issue will not prevent the City from regulating AT & T. Moreover, SWBT's fear of problems relating to municipal revenue and/or competitive neutrality is beyond the scope of this case and the issues raised in AT & T's motion. Variations in municipal revenue depend on the municipality's fee scheme and how CLECs and ILECs agree to pay such fees. Such variables are beyond the scope of whether or not the City's franchise requirement is preempted by § 253.

---

4. Section 522 provides that a "cable system" does not include "a facility that serves subscribers without using any public right-of-way." § 522(7)(B).

Finally, because AT & T does not "use" the City's rights-of-way when offering ADL through UNEs, § 253(c)'s "competitive neutrality" requirement is irrelevant. *See City of Dallas II* at 762.

Because SWBT's arguments and evidence do not create a genuine issue of material fact as to the declarations sought by AT & T, SWBT's and GTE's objections to the declarations are overruled, and AT & T is entitled to summary judgment on its § 253(a) preemption claim.

### c. Preemption of the City's Franchise Requirement as Applied to Teligent

Like AT & T's case, the City's franchise requirement imposed on Teligent is also preempted by § 253. As noted earlier, Teligent's case is different from AT & T's because Teligent does not own or occupy *any* City rights-of-way. *See City of Dallas II* at 761. In granting Teligent a preliminary injunction against the City enjoining the City from imposing its franchise requirement through City Ordinance 23325, this Court held that Teligent's services do not constitute "use" of the City's rights-of-way. *See id.* at 762. Because the factual record has not changed since that ruling, and because § 253(a) preempts the City's authority to subject Teligent to such franchise requirement, Teligent is entitled to summary judgment on its § 253 preemption claim.

The City argues that Teligent is not entitled to summary judgment on its § 253(a) claim because Teligent has failed to prove any violation of § 253(a). First, the City argues that Teligent's lease of facilities physically occupying City rights-of-way constitutes "use" of the City's rights-of-way within the meaning of § 253(c). Second, the City argues that even assuming that Teligent does not "use" the City's rights-of-way, the City's franchise requirement is not preempted

because the plain language of § 253 preempts only those state and local requirements that both fall outside § 253(c) and are shown to have the prohibitory effect proscribed by § 253(a)—the same "safe harbor" argument the City raised against AT & T's motion. Third, the City argues that Teligent has presented no evidence that the franchise requirements at issue prohibit or have the effect of prohibiting Teligent from providing telecommunications service in Dallas.

 These arguments are, again, unpersuasive. First, this Court has already rejected the City's "use" argument and held that under § 253(c), "use of public rights-of-way" means *physical occupation* of the public rights-of-way. *See id.* at 760. To clarify, because Teligent does not physically occupy any City rights-of-way, it is not subject to the City's franchise requirement. Second, as discussed above, the City's "safe harbor" argument is irrelevant because Teligent does not "use" the City's rights-of-way. Finally, Teligent has presented sufficient evidence that the franchise requirements at issue prohibit or have the effect of prohibiting Teligent from providing telecommunications service in Dallas. The undisputed facts reveal that the City, per Resolution 961121, refused to enter into a 9–1–1 emergency services agreement with Teligent unless Teligent accepted a franchise. *See* Agreed Facts ¶¶ 14, 15. Without 9–1–1 services, Teligent would be precluded from entering the Dallas market under the COA issued by the PUC. *See id.* at ¶ 19. Because such requirements are sufficiently prohibitive, *see City of Austin I*, 975 F.Supp. at 939, there is no genuine issue of material fact, and Teligent is entitled to summary judgment on its § 253(a) preemption claim.

### 2. Preemption Under Texas Law [5]

■ The Texas Constitution provides that:

5. This Court has supplemental jurisdiction over the Plaintiffs' state law claims per 28

U.S.C.A. § 1367 (West 1998).

[N]o [city] charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of the State.

Tex. Const. art. XI, § 5. Thus, "[t]he powers of home rule cities [like Dallas] are subject to and may be limited only by their charters or by the Constitution or by general law." *Lower Colorado River Auth. v. City of San Marcos,* 523 S.W.2d 641, 644 (Tex.1975). A constitutional or general law limitation may be express or implied. *Id.* at 645. However, "[s]uch a limitation will not be implied ... unless the provisions of the general law or of the charter are clear and compelling to that end." *Id.* (quoting *Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645, 649 (1951)).

 The Public Utilities Regulatory Act ("PURA") is a clear and compelling limitation of the City's authority to regulate telecommunications providers. Under PURA, the Public Utility Commission ("PUC") has exclusive jurisdiction to regulate telephone companies. *See* TEX. UTIL. CODE ANN. § 52.002 (West 1998). PURA limits the authority of Texas municipalities to regulate utilities as follows:

(a) This title does not restrict the rights and powers of a municipality to grant or refuse a franchise to use the streets and alleys in the municipality or to make a statutory charge for that use.

(b) A franchise agreement may not limit or interfere with a power conferred on the commission by this title.

*Id.* § 14.008. Like the FTA, PURA also has a savings provision that permits a municipality to regulate its rights-of-way:

This title does not restrict a municipality's historical right to control and receive reasonable compensation for access to the municipality's public streets, alleys, or rights-of-way and charge a fee for that use.

*Id.* § 54.205; *see also id.* § 52.002(a). Texas cities therefore have no general police power over telephone utilities. *See General Tel. Co. v. City of Perryton,* 552 S.W.2d 888, 891–92 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). In granting preliminary injunctive relief to AT & T and Teligent, this Court held that PURA "limits Texas cities to the authority to manage their rights-of-way and to receive compensation for their use." *City of Dallas I,* 8 F.Supp.2d at 592. The Court further held that "[t]he limited exceptions to the exclusive jurisdiction of the State PUC thus parallel the local authority granted by the FTA: municipalities may only regulate the use of their rights-of-way and charge a fee for that use." *Id.* at 592. While the City may require a telecommunications provider making use of its rights-of-way to obtain a franchise before offering services, the City may not grant the franchise based on its own discretion, and the only condition the City may impose is compliance with the City's reasonable regulations of its rights-of-way and fees for their use. *See id.* at 592–93. Moreover, under PURA, the City may not require a comprehensive application and may not consider the telecommunications provider's technical and organizational qualifications to offer telecommunications services. *See id.* at 593. PURA vests "that determination to the State PUC, and it may not be second-guessed by the City." *Id.;* TEX UTIL. CODE ANN. §§ 54.103, 14.008.

AT & T and Teligent argue that the City's franchise requirements exceed the City's limited authority under PURA. Both AT & T and Teligent concede that under PURA, the City may require telecommunications providers making use of the City's rights-of-way to agree to a franchise. However, AT & T argues that the conditions and fees imposed on AT & T by the City's form franchise go far beyond the limited authority granted to the City by PURA for control, and compensation for the use, of the City's rights-of-way. In addition, Teligent argues that the City cannot impose its form franchise requirement on Teligent at all because Teligent does not use—physically occupy—the City's rights-of-way. Because these conditions exceed the City's authority and be-

cause they also limit or interfere with a power conferred on the PUC by PURA, AT & T and Teligent argue that they are entitled to summary judgment on their PURA claims.

In response, the City argues that while PURA limits its authority in certain respects, e.g., regulating a telecommunications provider's rates and services, it does not limit its authority as much as AT & T and Teligent contend. Specifically, the City asserts that AT & T has neither explained nor offered any evidence as to why the form franchise requirement limits or interferes with PUC authority. With respect to the franchise requirement imposed upon AT & T, the City argues without evidence that it is designed not to determine AT & T's qualifications to provide service, but to protect the City's interest, as landlord of the right-of-way, in assuring that its right-of-way tenants have the experience and financial wherewithal to protect the right-of-way and to be financially responsible to cover the costs of any and all damages to the right-of-way that might occur. With respect to the franchise requirement imposed upon Teligent, the City argues without evidence that, except for the ubiquitous service and the prior notice conditions, the franchise requirement does not limit or interfere with PUC authority.

■ The City's arguments are again unpersuasive. The City's response evades the critical issue raised by AT & T and Teligent under PURA: whether or not the City's franchise requirements are related to the control or use of its rights-of-way. The City's unsupported argument that the franchise requirement imposed on AT & T does not limit or interfere with PUC authority is unconvincing in light of this Court's prior decisions, which held that the

City lacks authority to impose a comprehensive and burdensome franchise requirement as beyond its authority. *See City of Dallas I*, 8 F.Supp.2d at 593. Moreover, the City has not offered any evidence that would support its assertion that the franchise requirement imposed on AT & T is related to the City's control or use of rights-of-way at issue.[6] Additionally, the franchise requirement imposed on Teligent is preempted entirely by PURA because Teligent does not use any City rights-of-way. Because the City has failed to present any new arguments or evidence raising a genuine issue of material fact, AT & T and Teligent are entitled to summary judgment on their PURA claims.

### III. Conclusion

For the reasons stated above, AT & T's and Teligent's Motions for Summary Judgment are **GRANTED,** and the City's Amended Counterclaim against AT & T is **DISMISSED WITH PREJUDICE.** AT & T's Motion to Strike the City's Amended Counterclaim is **DENIED AS MOOT.** In addition, Teligent's equal protection, due process, ultra vires, and other claims raised in Counts Four, Six, Seven, Eight, and Nine of its Complaint for Declaratory Relief are **DISMISSED AS MOOT.** A judgment awarding AT & T and Teligent final declaratory and permanent injunctive relief against the City shall be entered.

---

6. The City's argument that it lacks such evidence because it has not had sufficient time or opportunity for adequate discovery is unpersuasive. As noted earlier, the City has had plenty of time to conduct whatever discovery it needed, but failed to seek discovery from AT & T until one month before the discovery deadline. Moreover, the type of evidence that might have created a genuine issue of material fact on AT & T's PURA claim would have been evidence *from* the City itself that would justify any of its franchise requirements as related to the control or use of its rights-of-way. In this context, the City has presented no evidence.